IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Martha Braxton,<br><br>    Plaintiff,<br><br>v.<br><br>Menard Inc.,<br><br>    Defendant. | Case No. 21 CV 02198<br><br>Honorable Nancy L. Maldonado |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Menard Inc.'s ("Menard") motion for summary judgment. (Dkt. 28.) Plaintiff Martha Braxton filed this suit against Menard in the Circuit Court of Cook County, bringing claims for negligence and premises liability. (Dkt. 1-1.)[1] Ms. Braxton alleges that she suffered injuries due to Menard's negligence after a door fell on her from behind while she was shopping at Menard. Menard timely removed the case to federal court on diversity grounds and eventually moved for summary judgment. For the reasons stated in this Opinion, the Court denies Menard's motion for summary judgment. The parties should submit a joint status report by July 12, 2024 proposing a schedule for any expert discovery and updating the Court on any settlement efforts and whether they wish to be referred to the assigned magistrate judge for a settlement conference.

**Background**

Plaintiff Martha Braxton is a citizen of Illinois. (Dkt. 33 ¶ 3.) Menard is a corporation and citizen of Wisconsin. (*Id.* ¶ 5.)[2] On March 15, 2019, Ms. Braxton, her son, Fredrick Braxton, and

---

[1] In citations to the docket, page numbers are taken from the CM/ECF header, except when the Court cites to deposition testimony, in which case the Court will cite to the internal transcript page and line number.

[2] The Court cites in particular to Ms. Braxton's response to Menard's statement of facts, (Dkt. 33), and Menard's response to Ms. Braxton's statement of additional facts, (Dkt. 36), where both the asserted fact and the opposing party's response are set forth in one document.

1

her granddaughter, Sharyia Jones, visited the Evergreen Park, Illinois location of Menard to buy a door for her granddaughter's bedroom. (*Id.* ¶ 3, 11–12.) Ms. Braxton had been to this Menard location before and was generally familiar with the layout of the store, although she could not recall whether she had previously been to the door section. (*Id.* ¶ 10.)

On the day in question, Ms. Braxton and her family went to the door section of the store, which was set up such that doors were stacked upright on both the right and left side of the aisle. (*Id.* ¶¶ 14–15.) Ms. Braxton attached photos of the door display to her statement of additional facts, and the parties do not dispute that the photos are true and accurate depictions of the door aisle as it was on March 15, 2019. (Dkts. 33-1, 33-2; Dkt. 36 ¶¶ 64–65.) Ms. Braxton and her family turned to look at a specific stack of doors and began discussing the door's measurements. (Dkt. 33 ¶ 26.)

Upon entering the door aisle, Ms. Braxton noted that the doors opposite where she was looking seemed to be stacked straighter. (*Id.* ¶ 20.) Jones testified that she found the setup of the doors "weird" and that both she and her grandmother were aware that it might be risky to touch the doors for fear of them falling. (*Id.* ¶ 21; Dkt. 29-2 at 20:11–20.) No Menard employees were in the door aisle during the time Ms. Braxton and her family were there. (Dkt. 33 ¶ 23.) The only other person present in the aisle was a customer who was looking at doors on the side of the aisle opposite of where Ms. Braxton and her family were looking. (*Id.* ¶¶ 24–25.)

At the time Ms. Braxton was looking at the door, she was closer to the door than she was to the middle of the aisle. (*Id.* ¶ 18.) While looking at the door and discussing its measurements with her family, another door suddenly fell on her from behind. (*Id.* ¶ 27.) Neither Ms. Braxton nor her family members saw the door fall onto Ms. Braxton. (*Id.* ¶¶ 28–30.) Ms. Braxton testified that the other customer in the door aisle was looking at doors about one to two doors away from

2

the door that fell on her, and Jones testified that she saw the man touching "something" but was not sure whether he was touching a door. (*Id.* ¶¶ 32–33.)

The door that fell on Ms. Braxton weighed between 40 to 55 pounds. (Dkt. 36 ¶ 62.) Following the fall, Mr. Braxton took the door off of Ms. Braxton, and placed it back with the other doors. (Dkt. 33 ¶¶ 31; Dkt. 36 ¶ 67.) Crystal Arroyo, the Front-End Manager of the Evergreen Park Menard location, was then informed of the incident (Dkt. 33 ¶¶ 34, 38.) Ms. Braxton declined an ambulance and accompanied Arroyo to the front of the store to fill out an incident report. (*Id.* ¶ 40.) Based on the information provided by Ms. Braxton, Arroyo wrote on the incident report, "Guest claimed she was looking at a door while guest behind her was looking at another door. The guest behind her was pulling a door forward when a door next to the guest fell on the back of head." (*Id.* ¶ 41.)

The Menard door aisle is a permanent display within the store's Building Materials Department and is designed at the corporate level of Menard and implemented at each individual store. (Dkt. 36 ¶¶ 68–69.) When doors are delivered to the Menard Evergreen Park location, the team managers and whoever else is available in the Building Materials Department put the doors on display. (Dkt. 29-5 at 23:1–9.) The stacks of doors are reinforced with a horizontal steel beam that runs horizontally across the backs of the door stacks. (Dkt. 33 ¶ 54.) Menard customers are permitted to move the subject doors themselves although Menard employees are available to help. (*Id.* ¶¶ 35, 52.)

Arroyo testified that up until Ms. Braxton's incident, she had never received any complaints about the set-up of the door aisle or dealt with any injury claims relating to the door aisle or the Building Materials Department. (*Id.* ¶¶ 43–44.) Florencio Viramontes, the First Assistant Manager of the Building Materials and Millwork Department for the Evergreen Park Menard location, also

3

testified that he had not received any complaints regarding the configuration of the door aisle until Ms. Braxton's injury. (*Id.* ¶ 55.)

Within the door aisle (and throughout the Menard store), there is a green mat upon which merchandise is stacked. (Dkt. 29-5 at 19:24–20:14.) The parties dispute the purpose of the green mat: Ms. Braxton asserts that doors are meant to stay on the mat for the safety of customers, while Menard asserts that the purpose of the mat is unknown. (Dkt. 36 ¶ 60.) Viramontes testified that merchandise is supposed to stay on the mat, (Dkt. 29-5 at 20:12–14), but he was unable to say why that is the case, and he confirmed that he did not have a directive or instructions from Menard that said that merchandise is supposed to stay on the mat. (*Id.* at 20:8–21.) Viramontes further stated that if there are too many doors to fit on the green mat, Menard employees will leave the doors on the floor (outside of the green mat). (*Id.* at 20:22–21:3.) Viramontes, however, also testified that if, during an inspection of the store, he saw there was room on the green mat and doors were on the floor, he would place the doors onto the mat "[b]ecause you don't want nothing on – you know, on the floor. Something – nobody gets hurt. Nobody gets hurt like that." (*Id.* at 36:1–7.) Lastly, Viramontes testified "No" when asked by Menard's counsel, "And you would agree with me that if [doors are] on the floor, that's not something that you would consider as not proper, correct?" (*Id.* at 47:5–8.)

Menard has a policy that employees are supposed to look throughout the day for anything that may be out of order and, if something is found to be out of order, employees are supposed to fix the issue or report it. (*Id.* ¶ 45.) Viramontes testified that there is no formal procedure for employee walk-throughs of the store; they are supposed to just fix or report any issues they see. (Dkt. 33 ¶¶ 47, 50.)

4

On March 12, 2021, Ms. Braxton filed a complaint in the Circuit Court of Cook County, initiating the present action against Menard. (Dkt. 1-1.) Ms. Braxton seeks monetary damages "in excess of $50,000," and alleges that she has "sustained injuries of a personal, permanent, and pecuniary nature." (*Id.* ¶ 9.) Menard timely removed the case to this Court on the basis of diversity jurisdiction. (Dkt. 1.) After fact discovery closed, Menard moved for summary judgement. (Dkt. 28.)

**Legal Standard**

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone, but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving

party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

**Discussion**

Menard moves for summary judgment on Counts I and II of Ms. Braxton's Complaint: her premises liability and negligence claims. Specifically, Menard argues that it did not owe Ms. Braxton a duty to warn or protect her from an open and obvious condition, that even if it did have a duty, it did not breach it as it did not create the dangerous condition or have notice of it, and that it did not proximately cause her injuries. (Dkt. 30 at 5.)

A plaintiff bringing a negligence claim under Illinois law must show: "(1) a duty owed by the defendant, (2) a breach of that duty, and (3) injury that was proximately caused by the breach." *West v. Home Depot, U.S.A., Inc.*, No. 21 CV 1145, 2023 WL 5934898, at *4 (N.D. Ill. Sept. 12, 2023). "A claim of premises liability is a negligence claim, requiring the plaintiff to prove a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Stanley v. Ameren Illinois Co.*, 982 F. Supp. 2d 844, 855 (N.D. Ill. 2013). The Court will thus address the elements of negligence in turn, beginning with the question of whether Menard owed a duty of care to Ms. Braxton.

### I. Duty

Under Illinois law, landowners owe business invitees a duty to maintain their business premises in reasonably safe conditions. *West v. Home Depot, U.S.A., Inc.*, No. 21 CV 1145, 2023 WL 5934898, at *5 (N.D. Ill. Sept. 12, 2023). Illinois courts consider the following factors when determining whether a duty of care exists: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the

consequences of placing that burden on the defendant." *Id.* (quoting *Quiroz v. Chi. Trans. Auth.*, 211 N.E.3d 437, 442 (Ill. 2022).

The open and obvious doctrine is an exception to a landowner's duty of care. *Id.* at *5. If a business owner can demonstrate that the condition giving rise to the plaintiff's harm was open and obvious, courts will find that the first two elements of duty—the foreseeability of harm and likelihood of injury—are slight. *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018). The underlying logic of the open and obvious doctrine is that "[t]he open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Id.* at 906. Although generally duty is a question of law, the question of whether a dangerous condition is open and obvious can be one of fact. *West*, 2023 WL 5934895, at *5.

a. **Open and Obvious Condition**

Menard first contends that it did not owe Ms. Braxton a duty of care as the potentially unsafe nature of the door aisle was an open and obvious condition. Whether a particular condition is open and obvious is assessed objectively. *Id.* Courts ask whether "a reasonable person in the visitor's position, exercising ordinary intelligence, perception and judgment, would recognize both the condition and the risk." *Atchley v. Univ. of Chi. Med. Ctr.*, 64 N.E.3d 781, 791 (Ill. App. Ct. 2016). This inquiry is a question of law where there are no material disputes about the condition's physical nature and risk. *Id.*; *Romano v. Roundy's Illinois, LLC*, No. 21-CV-1463, 2022 WL 4356926, at *6 (N.D. Ill. Sept. 20, 2022).

Menard argues that the undisputed facts evidence that the door aisle was an open and obvious condition. (Dkt. 30 at 10–15.) Both Ms. Braxton and Jones testified that they noticed that the doors behind Ms. Braxton were leaning straighter than the doors opposite, and Jones stated

7

that she and her grandmother did not want to touch any of the doors as they felt the set-up was "weird." Jones further admitted that she was apprehensive that the doors might fall if she touched them. Menard claims that Ms. Braxton and Jones were therefore aware of the hazardous condition and risk posed by the stacked doors.

Although Ms. Braxton spends little time on this issue, the Court concludes, based on the record, that the question of whether the door aisle was an open and obvious condition should go to a jury. Under the open and obvious doctrine, courts ask whether a reasonable person would appreciate not only the condition, but also *the risk* posed by the hazardous condition. *See Romano*, 2022 WL 4356926, at *8; *West*, 2023 WL 5934898, at *6. Ms. Braxton's testimony suggests that she and her family members were aware of the physical condition and even of the risk associated with touching the doors. Nevertheless, the Court finds that the evidence in the record does not show that Ms. Braxton necessarily appreciated the risk that a door could spontaneously fall on her while she was standing in the aisle. *See West*, 2023 WL 5934898, at *6 ("It is undisputed that Plaintiff was able to *see* the stud display. But it is disputed whether a reasonable person with her knowledge of the situation would appreciate the risk the display presented and know to avoid the hazard.") (emphasis in original). Moreover, looking at the photos of the door aisle on March 15, 2019, the Court cannot conclude, as a matter of law, that a reasonable person would appreciate the risk posed by the leaning stacks.

Menard relies heavily on the Seventh Circuit's opinion in *Dunn v. Menard, Inc.* for the proposition that Menard has no duty to warn or protect customers from falling objects when their hazardous condition is open and obvious. (Dkt. 30 at 11) (citing 880 F.3d at 907–08). In *Dunn*, a sixteen-foot stack of insulation fell on the plaintiff as he was loading a roll of insulation into his car in a Menard's self-service yard. 880 F.3d at 904. Prior to loading his car, the plaintiff noted that

8

the stack of rolled insulation in question "was not straight," "seemed too high," and that it was "pretty obvious" that it was "leaning and unstable." *Id.* The plaintiff told his son to "keep an eye" on the stack, and observed the stack for about five minutes, deciding whether "it was safe to proceed." *Id.* The plaintiff began loading other stacks of insulation into his car only after he determined that he could do so without touching the unstable stack. *Id.*

Based on these facts, the Seventh Circuit affirmed the district court's holding that the insulation stack was an open and obvious condition such that Menard did not owe the plaintiff a duty of care. *Id.* at 907. Although the plaintiff argued that he only ascertained the risk involved with touching the insulation stacks (as opposed to simply standing next to them), the Seventh Circuit found that this assertion was unsupported by the record given the time the plaintiff spent determining whether it was safe to begin loading his car and his warning to his son. *Id.* at 907–08. The Seventh Circuit concluded that, in any event, a reasonable person would not stand underneath a sixteen-foot, clearly unstable stack of insulation, regardless of whether he touched the stack or not. *Id.* at 908.

This Court, however, finds that *Dunn* is factually distinguishable from the case at hand. While the plaintiff in *Dunn* specifically noted that the sixteen-foot stack of insulation rolls was obviously unstable, Ms. Braxton and her granddaughter testified that some of the door stacks seemed straighter, that the set-up was "weird," and that they therefore did not want to touch the doors out of fear that they might fall. Based on the differences in testimony in *Dunn* and this case, the question of whether a reasonable person would have appreciated the risks of being in the Menard door aisle should go to a jury. Further, while the plaintiff in *Dunn* monitored the insulation stack for five minutes, Jones testified that the door fell on Ms. Braxton shortly after they arrived at the aisle and that they did not have a chance to look around the aisle for very long. (Dkt. 29-2

9

at 17:21–18:1.) There is thus less circumstantial evidence in the record for the Court to conclude, as a matter of law, that a reasonable person would indisputably appreciate the risk posed by the door aisle. Finally, the presence of the other customer in the door aisle undermines Menard's argument that the door aisle was an obviously hazardous condition, given that this customer also chose to undertake the same risk.

For these reasons, the Court finds that the question of whether a reasonable person standing in a self-service aisle of a retail store with doors stacked against the aisles would necessarily appreciate and avoid the risk involved is best left to a jury.

### b. Distraction and Deliberate Encounter Exceptions

Rather than spending time arguing that the door aisle was not an open and obvious condition, Ms. Braxton mainly argues against summary judgment on the grounds that the distraction exception or the deliberate encounter exception should apply. Although the Court has already found that the open and obvious condition issue should go to a jury, in view of Ms. Braxton's minimal arguments to that end, the Court will also address whether the other exceptions she raises apply, starting with the distraction exception.

The distraction exception applies if a landowner "has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious." *Romano*, 2022 WL 4356926, at *9 (quoting *Sollami v. Eaton*, 772 N.E.2d 215, 223 (Ill. 2002)) (internal citation and quotation marks omitted). Courts apply an objective standard when determining whether the distraction exception has been met and ask whether there were "special circumstances of which a reasonable landowner would be aware that would cause people to be distracted at the site of plaintiff's accident, as opposed to the world at large." *Scott v. Menard, Inc.*, No. 16 C 723, 2017 WL 3421553, at *3 (N.D. Ill. Aug. 9, 2017). The distraction exception generally requires a finding

10

that the landowner in some way "created, contributed to, or was responsible in some way for the distraction which diverted the plaintiff's attention from the open and obvious condition." *Romano*, 2022 WL 4356926, at *9 (quoting *Sandoval v. City of Chicago*, 830 N.E.2d 722, 729 (Ill. App. Ct. 2005)).

The exception is only applicable if there is evidence that the plaintiff "was actually distracted" from the hazardous condition. *Scott*, 2017 WL 3421553, at *5 (quoting *Bruns v. City of Centralia*, 21 N.E.3d 684, 691 (Ill. 2015)). It will not apply if the plaintiff was merely looking elsewhere, or if the distraction was self-created. *Dunn*, 880 F.3d at 909. But the exception will apply even if the plaintiff originally saw the hazard prior to being distracted, so long as the distraction caused the plaintiff to momentarily forget it. *Romano*, 2022 WL 4356926, at *9. If a court finds that the distraction exception is applicable, the exception essentially reverses the impact of the open and obvious doctrine: a court will find that the foreseeability and likelihood of the injury is increased, and a duty of care should be imposed. *Id.* (citing *Bruns*, 21 N.E.3d at 691).

Braxton argues that the distraction exception applies because, at the time that the door fell on her, she was distracted by looking at other merchandise and trying to determine which door to purchase. (Dkt. 32 at 9.) In response, Menard argues that Braxton has provided no evidence that she was actually distracted and her evidence, instead, merely demonstrates she was looking away or engaged in a self-created distraction. (Dkt. 35 at 2–3.)

The Court finds that there is sufficient evidence in the record such that a jury could conclude that Ms. Braxton was actually distracted. Several courts have applied the distraction exception to customers who are momentarily distracted while looking at merchandise in a retail store. *See, e.g.*, *Romano,* 2022 WL 4356926, at *10 ("[C]ourts have consistently found genuine issues of fact precluding summary judgment where there is evidence that the plaintiff was

11

distracted from an otherwise obvious hazard due to being preoccupied with shopping."); *Williams v. Walmart Inc.*, No. 18 C 1356, 2019 WL 2357043, at *4 (N.D. Ill. June 4, 2019) (collecting cases); *Fetzer v. Wal-Mart Stores, Inc.*, No. 13 C 9312, 2016 WL 792296, at *17-18 (N.D. Ill. Mar. 1, 2016).

A jury could find that Ms. Braxton was actually distracted from the hazardous condition (the doors stacked behind her) as she was inspecting the door in front of her and discussing its measurements with her family. Because Menard is responsible for the layout of the store and the design of the door aisle, the distraction created by the door that Ms. Braxton was looking at is ultimately attributable to Menard. Moreover, Menard chose to lay out the door aisle section such that a retail customer deciding whether to buy a door will likely have her back to another wall of doors, increasing the likelihood that a customer would be distracted from the potentially dangerous condition of the door stacks behind her.

The fact that Ms. Braxton and Jones noted that the set-up of the door stacks was unusual upon first entering the aisle does not render the distraction exception inapplicable. Their testimony still creates a genuine issue of fact as to whether they were sufficiently focused on the door and their discussion of the door measurements such that they momentarily forgot about the hazardous condition. *Romano*, 2022 WL 4356926, at *12 (noting that "Illinois law does not set any 'minimum' amount of time that must pass before a plaintiff can be said to potentially have forgotten about a hazard"). Despite Menard's suggestion that Ms. Braxton's conversation was a distraction of her own making, her discussion with her family members was still connected to her evaluation of Menard merchandise. Making all inferences in Ms. Braxton's favor, the Court finds that she has provided sufficient evidence that she was ultimately still distracted by her inspection of the door and that a jury could find the same.

12

The Court, however, dispenses with Ms. Braxton's deliberate encounter exception argument in brief. Courts have found that this exception is most frequently used for situations involving economic compulsion, "such as when a plaintiff 'is forced to choose between facing danger and neglecting his duties' to an employer." *Dunn*, 880 F.3d at 908–09 (quoting *Atchley*, 64 N.E.3d at 791). *But see Kleiber v. Freeport Farm & Fleet, Inc.*, 942 N.E.2d 640, 652 (Ill. App. Ct. 2010) (Holdridge, J., dissenting) ("The deliberate encounter exception does not require that the plaintiff have an economic reason for encountering the danger."). Braxton makes no argument and has provided no evidence that such an impetus existed here. In any event, disposition on the deliberate encounter exception is unnecessary as the Court has already found that the distraction exception applies.

c. **Remaining Duty Analysis**

Having found that a jury should decide the open and obvious condition and distraction exception issues discussed above, the Court will analyze the remaining two factors of duty: the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the premises owner.

Menard argues that the magnitude of the burden of guarding against injuries of the type that Ms. Braxton suffered and the consequences of placing that burden on Menard would be too great because Menard would have to expend significant resources to ensure employees are constantly monitoring all areas of any Menard store to prevent customers from having harmful encounters with merchandise. (Dkt. 30 at 15–16.) Menard further contends, citing *Dunn v. Menard*, that less burdensome safeguards would not be justified given the open and obvious nature of the hazardous condition. (Dkt. 35 at 6) (citing 880 F.3d at 910.) Ms. Braxton counters that the burden

13

would be minimal as Menard could simply place a warning sign or install hardware that would prevent the doors from falling forward. (Dkt. 32 at 13.)

The Court finds Menard's arguments are unpersuasive, given the Court's prior conclusion that the evidence in the record shows there is a genuine issue of material fact as to whether the door display constitutes an open and obvious condition. Seventh Circuit caselaw supports Menard's contention that it would be excessively burdensome for a court to order a retail store to deploy continuous employee monitoring to detect any hazardous conditions. *Dunn*, 880 F.3d at 910. But if a jury finds that the door display is not obviously hazardous and that a reasonable person would fail to avoid the risk of standing in the aisle, putting up warning signs or even installing a sturdier structure for storing the doors may not be excessively onerous. *See West*, 2023 WL 5934898, at *8 (rejecting defendant's argument that a less onerous safeguard is unjustified because the alleged hazard is open and obvious in light of prior finding that the question of whether the hazardous condition is open and obvious should go to a jury). The Court thus finds, making all inferences in Ms. Braxton's favor, that the third and fourth factors of the duty analysis are met. Accordingly, the Court holds that Menard owed a duty of care to Braxton.

## II.     Breach of Duty

Having found that Menard owed Ms. Braxton a duty of care, the Court will now turn to the issue of whether Ms. Braxton has adequately shown that Menard breached that duty. Generally, to hold a defendant liable for failing to maintain its property in a reasonably safe condition, the defendant "must have had actual or constructive notice of the dangerous condition." *West*, 2023 WL 5934898, at *8. A plaintiff can establish constructive notice by providing evidence that "the dangerous condition was present for a sufficient length of time such that in the exercise of ordinary

14

care its presence should have been discovered, or by showing that the dangerous condition was part of a pattern of conduct or a recurring incident." *Piotrowski*, 842 F.3d at 1040.

A plaintiff is, however, not required to prove notice where the defendant has created the dangerous condition. *Porges v. Wal-Mart Stores, Inc.*, No. 09 C 3705, 2011 WL 939922, at *8 (N.D. Ill. Mar. 15, 2011) ("Notice is not required where there is evidence that defendants were involved in creating a hazard."). A plaintiff attempting to prove that a defendant's own negligence created a hazard must:

> (1) show that the foreign substance was related to the defendant's business and (2) offer some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises.

*Wendt v. Menard, Inc.*, No. 21 C 01747, 2022 WL 4448750, at *3 (N.D. Ill. Sept. 23, 2022) (quotation marks omitted) (quoting *Zuppardi v. Wal–Mart Stores, Inc.*, 770 F.3d 644, 649–50 (7th Cir. 2014)). Courts have held that "the 'physical condition' of a defendant's store is related to the defendant's business for purposes of this test." *Id.*

Menard argues that it neither created any unsafe condition nor had any notice of any unsafe condition. (Dkt. 30 at 20–22.) As no one saw the door fall, and there were no Menard employees in the door aisle when the incident occurred, Menard asserts that Ms. Braxton lacks any evidence that Menard created an unsafe condition. (*Id.* at 21.) Moreover, Menard contends that it had no notice of the allegedly unsafe condition because Arroyo and Viramontes have never received any complaints about the door display nor dealt with any injuries resulting from falling doors, and Ms. Braxton provided no evidence on the length of time the allegedly unsafe condition was present. (*Id.* at 22.)

The Court finds that the door aisle is part of the physical condition of the store and is, therefore, related to Menard's business. Courts have held that store fixtures or merchandise

displays are related to the defendant's business for the purpose of establishing liability. *See, e.g.*, *id.* (holding water fountains were fixtures related to defendant's business); *Fetzer v. Wal-Mart Stores, Inc.*, 2016 WL 792296, at *16 (N.D. Ill. Mar. 1, 2016) (holding leaky roof was related to defendant's business); *Coffee v. Menard, Inc.*, 2015 WL 1399049, at *4 (N.D. Ill. Mar. 25, 2015) (holding merchandise display was related to defendant's business); *see also Piotrowski v. Menard, Inc.*, 842 F.3d 1035 (7th Cir. 2016). Menard designs the store's door aisle at the corporate level and the design is then implemented at each individual store. Menard employees are responsible for stacking the doors upon delivery, and they are supposed to conduct occasional walk-throughs to detect and fix any issues with the store. The door aisle and door stacks are thus related to Menard's business.

Furthermore, the Court finds that the question of whether Menard or a Menard employee was responsible for the unsafe condition should go to a jury. Ms. Braxton provided some evidence that Menard may have been negligent in not ensuring that doors were kept on the green mat, and the Court must credit this evidence, no matter how slight. In addition, Ms. Braxton testified that the doors in the aisle opposite her were stacked straighter than others, and Jones testified that the set-up was "weird." Menard employees are responsible for stacking the doors, and it is therefore reasonable to infer that Menard was responsible for creating the allegedly unsafe condition.

Granted, Menard suggests that the other customer in the door aisle may have caused the door to fall on Ms. Braxton and the incident report supports this suggestion. But construing the evidence in the light most favorable to Ms. Braxton, even if the other customer in the door aisle caused the door to fall upon Ms. Braxton in the immediate sense, a jury could still find that the way in which the doors were stacked was more likely than not the cause of the dangerous condition. *See Coffee*, 2015 WL 1399049, at *4 ("It is possible that one or more customers removed boxes

16

from the shelves and placed them in the aisle, *and* handled the boxes on the platform in such a way that they obstructed the walkway. A reasonable jury could find, however, that it is more probable that a Menard's employee haphazardly stocked the aisle, or else left the job incomplete."). Ms. Braxton has therefore provided sufficient evidence from which a jury could conclude that Menard created the unsafe condition, and she, therefore, does not need to show notice.

As a final point, the Court finds that there is sufficient evidence for the jury to come to the above conclusion, despite the fact that Viramontes' testimony on the purpose of the green mat varied. On the one hand, Viramontes professed not to know the reason why Menard employees place doors on the green mat and stated that they sometimes left the doors off the mat when there was not enough room. (Dkt. 29-5 at 20:15–21, 35:18–24.) On the other hand, Viramontes testified that merchandise is supposed to go on the green mat and that if he saw doors off of the green mats, he would place them back on the mat, if there was room, to keep customers safe. (Dkt. 29-5 at 20:12–14, 36:1–7.) Based on Viramontes' conflicting testimony, the Court finds that the question of whether Menard was ultimately responsible for Ms. Braxton's injury should be resolved by a jury.

### III. Proximate Cause

Finally, the Court will address Menard's argument that Braxton has not shown that it was the proximate cause of Braxton's injury. A plaintiff can only establish proximate cause "when there is a reasonable certainty that the defendant's acts caused the injury." *Aalbers v. LaSalle Hotel Props.*, 206 N.E.3d 329, 337 (Ill. App. Ct. 2022) (quoting *Salinas v. Werton*, 515 N.E.2d 142,144 (1987)). Proximate cause is generally a question of fact unless the facts alleged demonstrate that the plaintiff would never be entitled to recover. *Id.* A plaintiff may prove proximate cause through circumstantial evidence, but a court should find that a plaintiff has failed to meet his or her burden

17

of demonstrating proximate cause where the plaintiff offers only "mere surmise, guess or conjecture as to the cause of the injury." *Id.* "[A]n intervening act of a third party will cut off proximate cause only when the intervening act is unforeseeable." *West*, 2023 WL 5934898, at *11.

Menard's arguments challenging proximate cause are similar to its arguments disputing that it breached any duty of care to Ms. Braxton. Menard mainly argues that Ms. Braxton has provided only speculation and conjecture as to what caused her alleged incident and improperly relies on the fact that a door fell on her as proof of negligence. (Dkt. 30 at 18–19) ("Thus, nobody ever saw how or why the subject door fell on Plaintiff…consequently nobody can definitively say what caused the door to fall without speculating.").

The Court has already found that there is sufficient evidence in the record for a jury to conclude that Menard was responsible for the unsafe condition. For the same reasons, the Court rejects Menard's argument that because Ms. Braxton does not know what immediately caused the door to fall, her evidence of proximate cause amounts to mere speculation or conjecture. As stated above, Ms. Braxton provided evidence that some of the doors were hazardously displayed as they were not placed on the green mat and were stacked straighter than others. Ms. Braxton has thus provided evidence of specific defects that could have ultimately caused her injury. *See Lee v. Phillips Petroleum Co.*, No. 00 C 4070, 2001 WL 604189, at *5 (N.D. Ill. May 31, 2001) (rejecting defendant's argument that plaintiffs failed to provide enough evidence demonstrating proximate cause as plaintiffs "point[ed] to specific defects (taken together) that allegedly constitute proximate cause of" the plaintiff's fall).

Ms. Braxton's evidence also distinguishes her case from *Kimbrough v. Jewel Companies, Inc.*, 416 N.E.2d 328 (1981). In *Kimbrough*, the plaintiff sued the defendant after slipping and falling on a ramp at the defendant's store, but she testified that she could not remember what she

18

fell on and although she saw that there were grease spots on the ramp after the fall, she could not say whether she had stepped on the grease. *Id.* at 330–31. The *Kimbrough* court affirmed the trial court's grant of summary judgment on the plaintiff's claim due to her inability to state what caused her fall and the lack of witnesses available to present evidence on the cause of her fall. *Id.* at 332.

Ms. Braxton is, however, able to provide evidence that supports her theory that Menard's negligence in displaying their doors ultimately caused a door to fall upon her. This case therefore does not require the same kind of inferential leap that a jury would have needed to make to find for the plaintiff in *Kimbrough*. Moreover, Ms. Braxton, unlike the plaintiff in *Kimbrough*, is able to clearly state the cause of her injury: a door fell upon her. Employing common sense, it is reasonable to infer that if a door falls on a customer in a retail store who is simply standing in an aisle with doors stacked on either side of them, the retail store is responsible for negligently displaying the merchandise. *See Velez v. Menard, Inc.*, No. 13 CV 5045, 2014 WL 5423141, at *4 (N.D. Ill. Oct. 24, 2014) ("Yet, Menard's does not identify any authority that would require plaintiffs to account for all physical phenomena that led to their injuries in order to survive summary judgment….In fact, '[c]ircumstantial evidence does not need to exclude all other possible inferences or support only one logical conclusion.'"). The Court thus finds that the factual circumstances surrounding Ms. Braxton and the *Kimbrough* plaintiff's incidents are meaningfully different.

The Court, therefore, mainly focuses on whether the other customer in the door aisle (or any other customer handling doors in the aisle) was an intervening cause that broke the chain of causation between Menard's actions and Ms. Braxton's injuries.

The Court finds that a jury could conclude that the man in the door aisle who may have been touching a door at the time of Braxton's injury was not an unforeseeable, intervening cause.

19

Menard allows customers to move doors by themselves in the door aisle, and it does not station employees to constantly monitor the door aisle. It is thus highly foreseeable that a customer would try to remove a door without employee assistance. Consequently, if a jury concludes that Menard negligently stacked its door display, it could likewise find, even if another customer was removing a door at the time of the incident, that his conduct was not so unforeseeable as to break the chain of causation. In other words, regardless of whether the man in the aisle caused the door to fall upon Ms. Braxton by removing another door, a jury could still find that Menard was ultimately responsible for Ms. Braxton's injuries as the man's actions were foreseeable. *See West*, 2023 WL 5934898, at *11 (finding plaintiff and third-party's actions did not preclude finding that defendant proximately caused plaintiff's injuries because the product that fell upon plaintiff was displayed in a manner that permitted customers to help themselves and defendant thus knew that customers would touch the merchandise). Accordingly, the Court finds that Ms. Braxton has sufficiently demonstrated that Menard proximately caused her injuries.

As the Court has determined that Ms. Braxton has provided sufficient evidence such that a jury could find for her on the issues of duty, breach, and proximate cause, the Court holds that Menard is not entitled to summary judgment on Ms. Braxton's premise liability or negligence claims.

## Conclusion

For the foregoing reasons, Menard's motion for summary judgment is denied.

ENTERED: 7/1/24

*[signature]*

Nancy L. Maldonado

United States District Court Judge